CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
May 02, 2025
LAURA A. AUSTIN, CLERK
BY   s/ S. MELVIN
      DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# CHARLOTTESVILLE DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NORMAN EUGENE GOINS, JR.<br><br>*Defendant.* | CASE NO. 3:23-cr-00015-018<br><br>**MEMORANDUM OPINION**<br><br>JUDGE NORMAN K. MOON |

Defendant Norman Eugene Goins, Jr. moves for a *Franks* hearing based on what he contends are misleading omissions from an affidavit submitted in support of a search warrant application for 1188 Oak Creek Road. Dkts. 737, 748.[1] At a hearing on March 27, 2025, defense counsel also argued that the affidavit contained a misleading statement based on discovery materials related to two sources of information cited in the affidavit. The Court orally denied the motion for a *Franks* hearing. Dkt. 758. This Memorandum Opinion elaborates on why the Defendant fails to meet his burden for requesting a *Franks* hearing.

## I. BACKGROUND

Daniel House - a special agent with the Virginia State Police assigned to the Drug Enforcement Administration as a task force officer - submitted an affidavit to United States Magistrate Judge Joel C. Hoppe on September 5, 2023 as part of a residential search warrant

---

[1] Counsel for co-defendant Laqueshia Burgess filed this motion before she entered a plea agreement. Dkts. 737, 754. Goins's defense counsel moved "to adopt, conform, and have the benefit of" the motion, Dkt. 748, and argued the *Franks* hearing motion at a hearing on March 25, 2025. Dkt. 758. The Court has granted the Defendant's motion to adopt the "Motion to Adopt Co-Defendant Motion to Suppress Evidence and For Hearing Pursuant to Franks v. Delaware." Dkt. 804. Accordingly, the arguments raised in the *Franks* hearing motion are attributed to Goins throughout this Memorandum Opinion.

1

application. Dkt. 739-1 ("House Aff."). Law enforcement sought permission to search a residence located at 1188 Oak Creek Road, Palmyra, Virginia along with its curtilage, outbuildings, and any vehicles on the property. *Id*. at ¶ 1; *id*. at Att. A. The property to be seized was "all evidence relating to violations of distribution and possession with intent to distribute methamphetamine, cocaine, and fentanyl, in violation of 21 U.S.C § 841 and conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846, those violations involving Norman GOINS, Jr. and Laqueshia BURGESS, and their co-conspirators, and occurring after February 1, 2023." *Id*. at Att. B. The warrant application also sought authorization to seize computers and other devices. *Id*.

Law enforcement searched the property the following day. Dkt. 739 at 2. Agents located various firearms, ammunition, magazines, digital scales, packaging material, a money counting machine, and suboxone. *Id*. They also found a black safe containing $45,422, a compressed kilogram of fentanyl, and approximately 4,000 M-30 fentanyl pills, as well as methamphetamine located in a box on top of the safe. *Id*.

On September 27, 2023, the grand jury charged the Defendant with conspiracy to distribute and possess with the intent to distribute methamphetamine and fentanyl in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846; possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g); and possession with intent to distribute fentanyl and methamphetamine in violation of 21 U.S.C. § 841(a), (b)(1)(A), (c). Dkt. 240. In a Second Superseding Indictment issued February 28, 2024, the grand jury charged the Defendant with the same offenses as well as a count of possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A). Dkt. 323. More recently, on April 16, 2025, the grand jury issued a Third Superseding Indictment that only charges the Defendant with (1) possession of a

firearm by a prohibited person; (2) possession with intent to distribute fentanyl and methamphetamine; and (3) possession of a firearm in furtherance of drug trafficking. Thus, he no longer faces the conspiracy charge. This case is set for a jury trial in Charlottesville on May 12-16, 2025. Dkt. 736.

The Defendant challenges the 1188 Oak Creek Road search on the grounds that SA House made misleading statements and omissions in his affidavit that require a *Franks* hearing pursuant to *Franks v. Delaware,* 438 U.S. 154 (1978). Dkt. 737.

## II. LEGAL STANDARDS

A "*Franks* hearing" allows a defendant to attack a facially sufficient affidavit in a limited range of circumstances. *Franks* protects against statements made knowingly, intentionally, or with reckless disregard for the truth, as well as omissions designed to mislead or made with reckless disregard of whether they would mislead. *United States v. Colkley*, 899 F.2d 297, 300-301 (4th Cir. 1990). At a *Franks* hearing, if a defendant establishes an affiant's material perjury or recklessness by preponderance of the evidence, then the warrant "must be voided" and evidence gathered pursuant to the warrant must be excluded. *Id*. at 300.

The Fourth Circuit has set out two standards for determining whether to hold a *Franks* hearing. These depend on whether the defendant alleges that an affidavit contains affirmative false statements or omissions.

For affirmative false statements, the test is as follows:

> In order even to obtain an evidentiary hearing on the affidavit's integrity, a defendant **must first make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit."** This **showing "must be more than conclusory" and must be accompanied by a detailed offer of proof.** In addition, the false information **must be essential to**

3

> **the probable cause determination**: "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required."

*Id.* at 300 (citations omitted) (emphasis added).

For omissions, the Fourth Circuit has articulated the following standards:

> To obtain a *Franks* hearing, a defendant must make a "substantial preliminary showing" to overcome the "presumption of validity with respect to the affidavit supporting the search warrant." When a defendant relies on an omission, this heavy burden is even harder to meet. **In that situation, a defendant must provide a substantial preliminary showing that (1) law enforcement made an omission; (2) law enforcement made the omission "knowingly and intentionally, or with reckless disregard for the truth," and (3) the inclusion of the omitted evidence in the affidavit would have defeated its probable cause.**

*United States v. Haas*, 986 F.3d 467, 474 (4th Cir. 2021) (citations omitted) (emphasis added).

This showing also requires a detailed "offer of proof." *United States v. Tate*, 524 F.3d 449, 455 (4th Cir. 2008).

### III. Discussion

**1. Purported omissions do not support holding a *Franks* hearing**

*A. SOI 2's sexual relationship with Laqueshia Burgess*

The Defendant contends that the House Affidavit recklessly or intentionally omitted a critical piece of information: that an individual known as "SOI [Source of Information] 2" previously had a sexual relationship with Burgess. Dkt. 737 at 4-6.[2] He argues that this fact undermines SOI 2's credibility because SOI 2's history with Burgess gave SOI 2 a motive to provide negative information about the Defendant – who was, at that point, a romantic partner of

---

[2] The Defendant's motion is unclear about whether SOI 1 or SOI 2 had the prior relationship with Burgess but the Government's response clarifies that SOI 2 is the relevant individual. Dkt. 746 at 4.

4

Burgess and the father of a child with her. *Id*. at 5. The Defendant's theory is that SOI 2 may have viewed the Defendant as a romantic competitor (or that he sought to hurt Burgess because she chose "had chosen Defendant Goins as a paramour" instead of SOI 2). *Id*. These dynamics understandably create concern about whether SOI 2 provided accurate information to law enforcement. Nevertheless, the Court will not grant a *Franks* hearing on this matter for two reasons.

First, the Defendant has not met his burden of making a substantial preliminary showing that law enforcement omitted this information from the affidavit "knowingly and intentionally, or with reckless disregard for the truth." *Haas*, 986 F.3d at 474. He contends that SA House recklessly omitted the history of SOI 2 and Burgess's sexual relationship, Dkt. 737 at 4, but such a claim requires a showing that SA House "subjectively knew" that omitting the facts at issue "would negate probable cause." *Id.* at 475. In other words, the affiant must personally know of the omitted information. Otherwise, the affiant "cannot intentionally or recklessly omit it." *United States v. Pulley*, 987 F.3d 370, 379 (4th Cir. 2021) (holding that the "collective knowledge doctrine" of imputing knowledge from one law enforcement officer to another does not apply in the *Franks* context). The Defendant has provided no evidence that SA House knew of the information at issue and withheld it. He has provided no "[a]ffidavits or sworn or otherwise reliable statements of witnesses" or "satisfactorily explained" the absence of such evidence. *Franks*, 438 U.S. at 171.  By contrast, the Government submitted a declaration from SA House, made under penalty of perjury, in which he states that he did not attend any proffer interviews with SOI 2, Dkt. 746-1, which supports the Government's position that SA House did not know about the sexual relationship between SOI 2 and Burgess. Dkt. 746 at 5. Based on the limited record related to this matter, the Defendant has simply not made enough of a showing to

5

support the claim that SA House knew of the information and could have recklessly or intentionally it from the search warrant application.

Second, even if the Defendant provided some evidence that SA House knew of the sexual relationship, the information was immaterial to the probable cause determination. In assessing the significance of omitted information, the Fourth Circuit has instructed courts "to insert the facts recklessly [or intentionally] omitted, and then determine whether or not the corrected warrant affidavit would establish probable cause." *United States v. Wharton*, 840 F.3d 163, 169 (4th Cir. 2016). There is no *Franks* violation "[i]f the corrected warrant affidavit establishes probable cause." *Id*. Here, the fact of SOI 2's sexual history with Burgess would have had no bearing on whether the affidavit supported probable cause. The 27-page affidavit contained more than enough information to support probable cause. *See* Dkt. 802 at 7-17 (Memorandum Opinion summarizing key aspects of the affidavit and explaining how it provided probable cause for the search of 1188 Oak Creek Road). Probable cause for the search of the residence did not hinge on the information the affidavit cites from SOI 2. Indeed, just one paragraph of the affidavit refers to SOI 2. Dkt. 739-1 at ¶ 14. The inclusion of a reference to SOI 2's sexual relationship with Burgess would not negate or otherwise undercut the remaining information in the affidavit that supported probable cause, such as information provided by another source (SOI 3), the Defendant's two drug overdoses at the residence, or the fact that a suspected drug runner was observed leaving the residence in a missing vehicle and then lied to authorities about his whereabouts. In sum, the inclusion of the omitted information in the affidavit would not have defeated probable cause.

**B. CS2's theft of funds from controlled purchases**

The Defendant also contends that misconduct involving a confidential source, "CS2," was intentionally or recklessly omitted from the affidavit.[3] The affidavit describes two controlled purchases in which CS2 bought methamphetamine from Dushaun Gregory in August 2023. House Aff. at ¶¶ 34-46. Law enforcement recorded these purchases. *Id*. at ¶¶ 38, 44. However, as discussed in the Defendant and Government's briefs, it was later determined that CS2 stole a portion of the funds that law enforcement provided for the controlled purchases. Dkt. 737 at 6-7; Dkt. 746 at 8-11. The Government reports that this matter first came to law enforcement's attention in October 2024 and was promptly investigated. Dkt. 746 at 8-9. CS2 admitted in November 2024 that he improperly kept a portion of the funds for himself. *Id*. The Government states that it provided this information and the fact of CS2's misconduct to defense counsel. *Id*. at 9. Although the Defendant contends that this information was improperly omitted from SA House's affidavit, he fails to make the showings required for the Court to grant his request for a *Franks* hearing.

First, the Defendant presents no evidence that the affiant knew of CS2's misconduct at the time of the search warrant application in September 2023. SA House states in his declaration that he did not know of discrepancies in CS2's controlled purchases until October 2024. Dkt. 746. This was over a year *after* he submitted his affidavit for the search warrant application. The Defendant has produced no evidence that calls SA House's declaration into question, nor has he shown that SA House had any personal knowledge of CS2's misconduct at the time of submitting

---

[3] The Defendant refers to the individual as SOI 3, Dkt. 737 at 6, but the Government has clarified that the individual whose misconduct is at issue is "CI-2" and has provided this information to defense counsel. Dkt. 746 at 8. The Court refers to this individual as CS2 because that is how they are named in the House Affidavit. House Aff. at ¶¶ 34-46.

7

the affidavit. Thus, the Defendant has not made a substantial preliminary showing to demonstrate that SA House could have intentionally or recklessly omitted such information.[4]

Second, information about CS2's misconduct does not negate probable cause. As the Government correctly notes, the House Affidavit does not rely on CS2's statements or proffers. Dkt., 746 at 10. Instead, CS2's relevance to the affidavit is that he is identified as an individual who participated in the controlled buys. CS2's improper diversion of funds does not change the fact that the purchases occurred and were recorded. Even if the Government had discovered CS2's misconduct at the time of the search warrant application and included that information in the affidavit, it would not have changed (1) the fact that law enforcement had evidence of Dushaun Gregory selling methamphetamine and (2) the reasonable inferences that could arise from the Defendant's vehicle being tracked to Gregory's address on multiple occasions. Moreover, as noted earlier, the House Affidavit contained a multitude of information that supported probable cause for the search of the 1188 Oak Creek Road residence. Thus, when the Court inserts the facts that were allegedly recklessly or intentionally omitted, the "corrected warrant" would still establish probable cause. *Wharton*, 940 F.3d at 169. Accordingly, the Defendant has failed to show that the omitted evidence would have defeated probable cause.

**B. Purported misleading statements also do not merit a *Franks* hearing**

The Defendant seems to contend that SA House made affirmative misleading statements in the affidavit with respect to summarizing information obtained from SOI 1 and SOI 2.

---

[4] To the extent that the Defendant contends that the affiant should have known of CS2's misconduct sooner – such as by reviewing the controlled purchase recordings around the time of the purchases – such an argument is inconsistent with the principle that "reckless disregard in the *Franks* context requires a showing that the affiant personally recognized the risk of making the affidavit misleading." *Pulley*, 987 F.3d at 377. Thus, "[w]hat the officer-affiant *should* have known does not matter if he did not *in fact* know." *Id*. (italics in original). The Defendant has produced no evidence that SA House knew of CS2's misconduct and the Court will not speculate about when he should have known about it.

Defense counsel provided no briefing on this issue and raised it for the first time at the hearing on March 26, 2025. The Court understands the Defendant's position to be, in essence, that the following paragraph in the affidavit is inaccurate:

> In February and March of 2023, investigators with DEA and VSP conducted interviews of two sources of information (SOI 1 and SOI 2). SOI 1 and SOI 2 both made statements against their own penal interests. Both, SOI 1 and SOI 2 described a large-scale methamphetamine and cocaine drug-trafficking organization (DTO) led by Norman GOINS, Jr., a.k.a "Rock" (GOINS DTO) and aided by his girlfriend, Laqueshia BURGESS. These interviews also detailed the drug trafficking of TyQuane (Ty) GREGORY and his brother Dushaun GREGORY, who source their drug supply from GOINS, Jr. SOI 2 explained that Dushaun GREGORY and Ty GREGORY control the drug trade on Cleveland Avenue in the city of Charlottesville.

House Aff. at ¶ 14. At the hearing, his counsel seemed to take the position that it is inaccurate to say that "both" SOI 1 and SOI 2 "described a large-scale … drug-trafficking organization" led by the Defendant and Burgess. Although SOI 1 made statements to that effect, Dkt. 761-2, the Defendant relies on an investigative report summarizing a proffer interview with SOI 2 on March 14, 2023, to suggest that SOI 2 did not allege the Defendant or Burgess were involved with a "large-scale ... drug-trafficking organization." Dkt. 761-3.[5]

The Court interprets this paragraph as a general summary of what law enforcement had learned from these interviews when they are considered together.

Upon reviewing the documents submitted by the Defendant, the Court notes that SOI 2 identified the Defendant as a cocaine and methamphetamine source of supply in Charlottesville.

---

[5] Defense counsel also argued that the Court should consider it significant that SOI 2 participated in an interview with law enforcement on October 6, 2022 and did not mention the Defendant when discussing drug trafficking activities. Dkt. 761-4. To the extent that the Defendant contends that the affidavit's lack of reference to this is a material "omission," it is unclear how that would have been relevant to the affidavit, which related to the Defendant, Burgess, and the 1188 Oak Creek Road address. It is unremarkable that an affidavit would not reference SOI 2's allegations about individuals unrelated to the search.

*Id*. at ¶ 8. SOI 2 "estimated that in 3 to 6 months of drug deals" with the Defendant, he made "multiple kilogram cocaine purchases from [the Defendant], and purchased methamphetamine in 2 to 5 pound quantities per deal." *Id*. at ¶ 9. SOI 2 also alleged that the Defendant cleaned his drug money with trips to Las Vegas casinos. *Id*. at 10. Taken together, these allegations would be consistent with the operation of a drug trafficking organization.

However, the Court acknowledges that the only substantive reference to Burgess in the document relates to SOI 2 having a sexual relationship with her "for some time before … [SOI 2] was approached by [the Defendant] about drug trafficking." *Id*. at ¶ 8. Thus, if paragraph 14 of the affidavit is read as attributing information specifically to the March 15, 2023 proffer interview with SOI 2, it could be read as inaccurately implying that SOI 2 alleged that Burgess played a role in a drug trafficking organization. Nevertheless, even if the Defendant is correct that paragraph 14 of the affidavit contains an inaccuracy, he fails to carry his burden for requesting a *Franks* hearing. First, he has produced no evidence that SA House was aware of SOI 2's limited allegations about Burgess or that SA House knew his affidavit could mislead the magistrate. The Defendant has failed to make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Colkley*, 899 F.2d at 300 (quoting *Franks*, 438 U.S. at 155-56). Second, the information at issue is not essential to the probable cause determination. Indeed, even if paragraph 14's allegation about Burgess's involvement in drug trafficking was removed from the 27-page affidavit, the affidavit still contained plenty of information to show probable cause existed for a search of the 1188 Oak Creek Road residence. *Id*. ("[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required."

(quoting *Franks*, 438 U.S. at 171-72)). Accordingly, the Defendant's motion for a *Franks* hearing on the grounds that SA House's affidavit contains affirmative misleading statements fails.

## CONCLUSION

For the reasons provided above, the Defendant has not met his burden in requesting a *Franks* hearing regarding alleged omissions and misrepresentations in the affidavit submitted as part of the application for a warrant to search 1188 Oak Creek Road. He has not produced evidence showing that the affiant engaged in knowing, intentional, or reckless misrepresentations and omissions, nor has he shown that such information was essential to the probable cause determination. Accordingly, his motion is **DENIED**. An accompanying order will be entered on this date.

Entered this 2nd day of May, 2025.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE